**UNITED STATES of America, Plaintiff,**

v.

**George James AZEVEDO, Defendant.**
**Crim. No. 73–13289.**

United States District Court,
D. Hawaii.

Dec. 16, 1974.

Thomas P. Young, Asst. U. S. Atty., Harold M. Fong, U. S. Atty., Honolulu, Hawaii, for plaintiff.

Hyman M. Greenstein, Paul E. DiBianco, Honolulu, Hawaii, for defendant.

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

SAMUEL P. KING, Chief Judge.

George James Azevedo was indicted on August 23, 1973, for the offense of murder in the first degree (18 U.S.C. § 1111) allegedly committed on August 13, 1973, at the Hawaii Volcanoes National Park.

Azevedo was born on September 12, 1956. At the time of the incident giving rise to the charge, he was 16 years old, and a "juvenile" within the meaning of the Juvenile Delinquency Act, 18 U. S.C. §§ 5031–5037. He would have been turned over to the State authorities [1] except that the possible penalty includes (death or) life imprisonment. The then procedure is set out in 18 U.S.C. § 5032, which reads in pertinent part:

"A juvenile alleged to have committed one or more acts in violation of a law of the United States not punishable by death or life imprisonment, and not surrendered to the authorities of a state, shall be proceeded against as a juvenile delinquent if he consents to such procedure, unless the Attorney General, in his discretion, has expressly directed otherwise."

On April 5, 1974, Defendant moved to dismiss the indictment on the grounds that he was denied due process of law and equal protection of the laws by not being treated as a juvenile delinquent. These same issues were discussed in United States v. Quinones, 353 F.Supp. 1325 (D.Puerto Rico 1973) and decided adversely to Defendant's contentions.[2]

While these matters have been pending, Congress passed the Juvenile Justice and Delinquency Prevention Act of 1974, approved September 7, 1974. The federal Juvenile Delinquency Act was completely amended. 18 U.S.C. §§ 5031 and 5032 now read in pertinent part:

"§ 5031. Definitions

"For the purposes of this chapter, a 'juvenile' is a person who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday, and 'juvenile delinquency' is the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult."

"§ 5032. Delinquency proceedings in district courts; transfer of criminal prosecution

---

1. The liaison between federal and state authorities in this area has been excellent over the past years. The state family courts will accept all referrals of juveniles from federal law enforcement officials.

2. On a related question, the necessity of a hearing on, and the reviewability of, the Attorney General's decision to proceed against a juvenile as an adult, the Fourth Circuit refused to place procedural restrictions on the exercise of the Attorney General's discretion. Cox v. United States, 473 F.2d 334 (4th Cir. 1973). This is contrary to the usual requirements when a State juvenile court waives jurisdiction and permits a juvenile to be tried and sentenced as an adult. *See, Cox, supra* (discussion by Judge Winter in his separate opinion). *See also* Ramirez v. United States, 238 F.Supp. 763, 764 (S. D.N.Y.1965) (juvenile has no absolute right to be proceeded against as such under section 5032, even though he gives his consent) ; United States v. Alexander, 333 F. Supp. 1213, 1216 (D.C.Cir. 1971) (legislative exclusion of persons charged with certain crimes from general juvenile jurisdiction approved) ; United States v. Bland, 153 U. S.App.D.C. 254, 472 F.2d 1329 (to the same effect as *Alexander*), cert. denied, 412 U.S. 909, 93 S.Ct. 2294, 36 L.Ed.2d 975 (1973).

"A juvenile alleged to have committed an act of juvenile delinquency shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to an appropriate district court of the United States that the juvenile court or other appropriate court of a State (1) does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, or (2) does not have available programs and services adequate for the needs of juveniles.

"If the Attorney General does not so certify, such juvenile shall be surrendered to the appropriate legal authorities of such State.

"If an alleged juvenile delinquent is not surrendered to the authorities of a State or the District of Columbia pursuant to this section, any proceedings against him shall be in an appropriate district court of the United States. For such purposes, the court may be convened at any time and place within the district, in chambers or otherwise. The Attorney General shall proceed by information, and no criminal prosecution shall be instituted for the alleged act of juvenile delinquency except as provided below.

"A juvenile who is alleged to have committed an act of juvenile delinquency and who is not surrendered to State authorities shall be proceeded against under this chapter unless he has requested in writing upon advice of counsel to be proceeded against as an adult, except that, with respect to a juvenile sixteen years and older alleged to have committed an act after his sixteenth birthday which if committed by an adult would be a felony punishable by a maximum penalty of ten years imprisonment or more, life imprisonment, or death, criminal prosecution on the basis of the alleged act may be begun by motion to transfer of the Attorney General in the appropriate district court of the United States, if such court finds, after hearin, such transfer would be in the interest of justice.

"Evidence of the following factors shall be considered, and findings with regard to each factor shall be made in the record, in assessing whether a transfer would be in the interest of justice: the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems.

"Reasonable notice of the transfer hearing shall be given to the juvenile, his parents, guardian, or custodian and to his counsel. The juvenile shall be assisted by counsel during the transfer hearing, and at every other critical stage of the proceedings.

" . . . ."

The new Act contains no saving clause.

The government refers the court to 1 U.S.C. § 109, which reads as follows:

"§ 109. Repeal of statutes as affecting existing liabilities

"The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability. The expiration of a temporary statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the temporary statute shall so expressly provide, and

such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

The general subject of the application of such a saving clause is discussed in Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation, 121 U.Pa.L.Rev. 120 (1972). The author of that comment observes that "the federal saving statute clearly applies to both prosecution and penalty, and the courts, in cases in which their only basis for decision was the general saving statute, have consistently refused to apply mitigatory changes." Bradley v. United States, 410 U.S. 605, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973), reaffirms the federal position that the term "prosecution" includes the sentence.

Almost identical issues to those involved here were decided differently in New York and Massachusetts. In People v. Oliver, 1 N.Y.2d 152, 151 N.Y.S.2d 367, 134 N.E.2d 197 (1956), the court applied the new law retroactively.[3] In Nassar v. Commonwealth, 341 Mass. 584, 171 N.E.2d 157 (1961), the court interpreted the statute as having no retroactive effect.[4]

In assessing whether the *Oliver* approach or the *Nassar* approach to Azevedo's situation accords with the intent of Congress and the correct application of section 109, we have the recent case of Warden v. Marrero, 417 U.S. 653, 94 S. Ct. 2532, 41 L.Ed.2d 383 (1974). Justice Brennan for a majority of the court held that an offender's noneligibility for parole was a "penalty, forfeiture, or liability" saved from release or extinguishment by section 109.[5] These terms, he said, were used by Congress to include all forms of punishment for crime, and, as a consequence, the saving clause has been held to bar application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of an offense. *Id.* at 661, 94 S.Ct. at 2537. While the general saving clause does not ordinarily preserve discarded remedies or procedures, Congress meant ineligibility for parole to be part of the "punishment" which is saved by section 109.

In light of the foregoing, I hold that the exposure of a juvenile to mandatory treatment as an adult for offenses punishable by (death or) life imprisonment is a liability saved by section 109.

It is hereby ordered that the motion to dismiss is denied.

---

3. Defendant Oliver was 14 years old at the time of the act which led to his indictment for murder. He was found incompetent to stand trial and spent nine years in a mental institution. During this hospitalization the law was amended to provide that a person under the age of 15 could not be prosecuted criminally for any act but was subject only to delinquency proceedings. The court relied heavily on the humane objectives of the new law.

4. Defendant Nassar was 16 years old at the time of the act which led to his indictment for murder. After the indictment, a new statute was enacted which provided for delinquency rather than criminal proceedings against a person between the ages of 14 and 17 in all cases not punishable by death. Nassar later pleaded guilty to second degree murder. The plea was allowed to stand. The court noted the humanitarian purposes of the new law but found no legislative intent to override the general saving clause.

5. Justice Brennan noted the jettisoning of the retributive approach in the 1970 Act for the prevention and control of drug abuse but found no legislative intent to override the general saving clause.