STATE of Wisconsin, Plaintiff-Respondent,

v.

Martin J. ANNALA, Defendant-Appellant-Petitioner.

Supreme Court

*No. 90-2162-CR. Oral argument November 26, 1991.—Decided May 29, 1992.*

(Also reported in 484 N.W.2d 138.)

454

For the defendant-appellant-petitioner there were briefs by *Peter J. Thompson,* Eau Claire and oral argument by *Peter J. Thompson.*

For the plaintiff-respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the briefs was *James E. Doyle.*

CALLOW, WILLIAM G., J. This is a review under sec. (Rule) 809.62, Stats., of an unpublished decision of the court of appeals which affirmed a judgment of conviction by the circuit court of Taylor County, Judge Douglas T. Fox. The circuit court convicted defendant-appellant-petitioner Martin Annala on one count of first degree sexual assault in violation of sec. 940.225(1)(d), Stats. 1983-84.[1] The issue raised on review is whether the district attorney abused his discretion in prosecuting Annala. We hold that the district attorney did not abuse his charging discretion and, accordingly, we affirm the decision of the court of appeals.

The facts are not in dispute. In January of 1984, Annala sexually molested an eight-year-old child while babysitting her. Annala was fifteen years old at the time. Shortly thereafter, the child informed her mother about the incident. The child's mother discussed the matter with Annala's parents and it was agreed that Annala should seek counseling and he did receive counseling. No criminal charges were pursued at that time.

In December of 1988, when Annala was twenty years old, the victim received counseling for a variety of emotional problems. She informed her counselor of the 1984 incident. As a routine procedure, the counselor reported the information to the district attorney. The district attorney had a member of the sheriff's department question Annala about the incident. At the interview, Annala was informed of his *Miranda*[2] rights and

---

[1] Section 940.225, Stats. 1983-84, provides in relevant part:

 **(1)** FIRST DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class B felony:

 . . ..

 (d) Has sexual contact or sexual intercourse with a person 12 years of age or younger.

[2] *Miranda v. Arizona,* 384 U.S. 436 (1966).

he signed a form that he understood those rights. He admitted to the sexual contact with the victim. He also indicated that he knew what he did was wrong and that he had received the help he needed.

Originally, the district attorney decided not to prosecute Annala. The district attorney's decision not to prosecute was based on the age of the case, the defendant's age at the time of the alleged offense, the defendant's psychological counseling treatment, and the remote possibility of further inappropriate contact with the victim. However, following further discussions with the victim's family, their attorney, and a letter from the victim's therapist, the district attorney reluctantly instituted criminal charges against Annala. While the district attorney conceded that prosecuting Annala would be unfair to the defendant, he believed that prosecution would be in the best interests of the victim.

In *State v. Becker,* 74 Wis. 2d 675, 247 N.W.2d 495 (1976), this court held that before an adult defendant could be tried for an offense committed before he was eighteen years of age where no juvenile proceedings were instituted, the State was required to show at a due process hearing that the prosecution was not delayed manipulatively so as to avoid the juvenile justice system. *Becker,* 74 Wis. 2d at 678. Following a *Becker* hearing on August 2, 1989, the trial court found that Annala's prosecution was not intentionally delayed so as to avoid the juvenile justice system nor was it based on an improper motive.

Annala was subsequently tried and convicted of first degree sexual assault in violation of sec. 940.225(1)(d), Stats. 1983–84. Judge Fox sentenced Annala to three years probation and, as a condition of probation, thirty days in county jail. Annala appealed his conviction on the grounds that the district attorney abused his

prosecutorial discretion in charging Annala. The court of appeals affirmed, holding that there was no abuse of prosecutorial discretion.

As an initial matter, we take this opportunity to express our agreement with the decision in *State v. LeQue,* 150 Wis. 2d 256, 442 N.W.2d 494 (Ct. App. 1989). Questions of jurisdiction may be considered at any time by the court, regardless of whether such questions were properly raised in the lower courts. *Northern States P. Co. v. Hunter Bd. of Supv.,* 57 Wis. 2d 118, 132–33, 203 N.W.2d 878 (1973). In *LeQue,* the court of appeals held that the circuit court has jurisdiction to hear and determine charges brought against an adult defendant where the alleged offenses occurred when the defendant was a juvenile that could not be waived into adult court. *LeQue,* 150 Wis. 2d at 265. The facts in *LeQue* are almost identical to those in the present case. LeQue was accused of sexually molesting an eight and one-half-years-old child. He was fifteen years of age at the time of the alleged offense. The incident was reported several years later and when LeQue was eighteen years old, he was charged with first-degree sexual assault.

Annala argues that *LeQue* was improperly decided because on its face sec. 48.18(1), Stats.,[3] does not allow waiver of juvenile court jurisdiction unless the offender

---

[3]Section 48.18(1), Stats., states:

**48.18 Jurisdiction for criminal proceedings for children 14 or older; waiver hearing. (1)** If a child is alleged to have violated s. 940.01 or 940.02 on or after his or her 14th birthday or if a child is alleged to have violated any state criminal law on or after his or her 16th birthday, the child or district attorney may apply to the court to waive its jurisdiction under this chapter. The judge may initiate a petition for waiver if the judge disqualifies himself or herself from any future proceedings on the case.

was at least sixteen years old at the time of the alleged offense. He contends that the only means for adult court to obtain jurisdiction over an individual that was a child at the time of the offense is if there has been a proper waiver by the juvenile court. The logical conclusion of his contention is that an adult court could never obtain jurisdiction over an individual that allegedly committed criminal conduct prior to reaching age sixteen because the juvenile court could not waive jurisdiction under sec. 48.18(1). We disagree with the defendant's conclusion and his analysis of the statute.

■ Statutory interpretation is a question of law. *State v. Wittrock,* 119 Wis. 2d 664, 669, 350 N.W.2d 647 (1984). This court reviews questions of law *de novo,* giving no deference to the lower courts. *Id.*

> We employ a number of well settled rules of statutory construction which must guide our analysis . . .. First and foremost is the rule that our purpose is to ascertain and give effect to the intent of the legislature. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537–38, 345 N.W.2d 389 (1984). Our first resort in determining the legislative intent is to the language of the statute itself. *Id.* at 538. If the meaning of the statute is clear and unambiguous on its face, it is improper to employ extrinsic aids to determine the meaning intended. *Standard Theatres v. Transportation Dept.,* 118 Wis. 2d 730, 740, 349 N.W.2d 178 (1983); *Wis. Elec. Power Co. v. Public Service Comm.,* 110 Wis. 2d 530, 534, 329 N.W.2d 178 (1983). Conversely, if the language of the statute is ambiguous or unclear, the court will examine the scope, history, context, subject matter, and object of the statute in order to ascertain the intent of the legislature. *Ball* at 538.

*Tahtinen v. MSI Ins. Co.,* 122 Wis. 2d 158, 166, 361 N.W.2d 673 (1985).

We begin our analysis then by examining the language of the relevant statutes. Article VII, sec. 8 of the Wisconsin Constitution and sec. 753.03, Stats., vests within the circuit court the power to hear and determine all civil and criminal actions and proceedings unless exclusive jurisdiction is given to some other court. Chapter 48 of the Wisconsin Statutes, "The Children's Code," was enacted to specifically address the unique needs of children in areas such as custody, parental rights, adoption, foster homes, day care, and delinquency. Section 48.12(1), Stats., expressly provides that the juvenile court shall have "exclusive jurisdiction, except as provided in . . . [s.] 48.18, over any child 12 years of age or older who is alleged to be delinquent as defined in s. 48.02(3m)."

The plain language of the statute unambiguously explains that the exclusive jurisdiction of the juvenile court is of a limited nature and applies only to allegations against a *child,* not allegations against an adult.[4]

---

[4]The first step with statutory interpretation and construction is to examine the language of the statute itself. If the statutory language is ambiguous, then and only then does the court become involved in a legislative history and policy analysis. The language of sec. 48.12, Stats., unambiguously grants the juvenile court very limited jurisdiction that extends only to cases involving allegations against a child defendant. However, the dissenting opinion completely ignores the plain language of sec. 48.12 in its analysis. Rather, the dissent on its own volition would create juvenile court jurisdiction over an adult defendant—where none presently exists—to dismiss charges of criminal conduct that occurred prior to the defendant's sixteenth birthday. The statute clearly does *not* grant the juvenile court such jurisdiction or power

"Child" is defined under sec. 48.02(2), Stats., to mean "a person who is less than 18 years of age." Furthermore, "delinquent" under sec. 48.02(3m), Stats., means "a child who is less than 18 years of age and 12 years of age or older who has violated any state or federal criminal law." The jurisdiction of the juvenile court is determined by the individual's age at the time charged, not the individual's age at the time of the alleged offense. *State ex rel. Koopman v. Waukesha County Court,* 38 Wis. 2d 492, 497–500, 157 N.W.2d 623 (1968); *State v. Becker,* 74 Wis. 2d 675, 676, 247 N.W.2d 495 (1976); *State v. Avery,* 80 Wis. 2d 305, 310, 259 N.W.2d 63 (1977). Therefore, the juvenile court does not have jurisdiction over allegations against an *adult* defendant, regardless of the defendant's age when the alleged offense occurred.

Annala further contends that the present interpretation of sec. 48.12(1), Stats., creates an anomaly under sec. 48.12(2), Stats. Section 48.12(2) specifies that:

> If a proceeding is commenced under this section before a child is 18 years of age, but the child becomes 18 before admitting facts of the petition at the plea hearing or if the child denies the facts, before an adjudication, the [juvenile] court retains jurisdiction over the case to dismiss the action with prejudice, to waive its jurisdiction under s. 48.18, or to enter into a consent decree.

*See also In Interest of TDP,* 109 Wis. 2d 495, 326 N.W.2d 741 (1982). Annala maintains that the adult court could not acquire jurisdiction over an adult defendant that allegedly violated the law when he or she was less than sixteen years of age because the juvenile court has exclusive jurisdiction over such delinquent children

in the absence of a proceeding actually commenced in the juvenile court prior to the defendant reaching the age of eighteen.

and the only alternatives available to the juvenile court once the child turns eighteen is to dismiss the action with prejudice or enter into a consent decree. The defendant points out that, under sec. 48.18, Stats., the juvenile court could not waive its jurisdiction with respect to a child that allegedly violated the law prior to his or her sixteenth birthday, with the exception for first or second-degree intentional homicide.

Inapposite to the defendant's contention, our long-standing interpretation of sec. 48.12(1), Stats., does not create an anomaly with respect to sec. 48.12(2), Stats. While *Koopman, Becker,* and *Avery* predate 1977 Wis. Laws ch. 354 which revised sec. 48.18(1), Stats., and 1979 Wis. Laws ch. 300 which created sec. 48.12(2), Stats., the legislative changes in no way rendered our past decisions inapplicable. Rather, the legislative changes were entirely consistent with the interpretations of this court.

■

First, sec. 48.12(2), Stats., applies only "[i]f a court proceeding has been commenced under this section before a child is 18 years of age. . . ." It does not apply to proceedings commenced after a child becomes eighteen years of age. The initial jurisdiction of the juvenile court is framed in terms of the defendant's age at the time of prosecution because the juvenile court is only empowered under secs. 48.34 and 48.344, Stats., to impose rehabilitation treatment programs that are designed to benefit delinquent children. The programs are not designed to benefit an adult that has committed a criminal act, regardless of whether the criminal act was committed when the defendant was a child. Waiver of the juvenile court's jurisdiction is framed in terms of the defendant's age at the time of the alleged offense. Logically, the

juvenile court may not waive its jurisdiction if it does not have jurisdiction in the first instance.

Section 48.12(2), Stats., is strictly a procedural provision providing an incentive for cases involving minors to be filed in the juvenile justice system where, commensurate with immaturity, an appropriate disposition can be fashioned. The district attorney is required under the statute to consider the legislative conclusion that the child defendant and society in most cases will benefit most from the programs at the disposal of the juvenile court and an efficient disposition of the matter. Finally, the child defendant should logically prefer to be brought before juvenile court if the alternative is the adult criminal justice system. The dissent's construction of the statutes would provide an incentive for the child that commits a criminal act before turning sixteen years old to attempt to frustrate discovery of the criminal conduct as well as the identity of the offender until the child's eighteenth birthday, thereby avoiding legal accountability.

We have recognized that the jurisdictional limit of the juvenile court is susceptible to prosecutorial abuse. Therefore, to protect the interests of the child defendant and to preserve the important purposes of the Children's Code we have proclaimed that the state may not delay charging a child in order to avoid juvenile court jurisdiction. *State v. Montgomery,* 148 Wis. 2d 593, 603–04, 436 N.W.2d 303 (1989); *Becker,* 74 Wis. 2d at 678. No such prosecutorial misconduct was involved here.

Second, the practical effect of Annala's contention would be to lower the statute of limitations under sec. 939.74(1), Stats., for felony crimes from six years to something less than six years where the defendant was between the ages of twelve and sixteen years old at the time of the alleged criminal conduct. We do not think

that the legislature intended to allow a minor who is less than sixteen years old who commits a serious felony to cajole or manipulate the victim or conceal the crime or conceal suspected culpability for the crime until reaching eighteen years of age and thereby conclusively frustrating the State's ability to hold him or her accountable for the wrongdoing. Had the legislature intended to effectuate this drastic change in the law, it would have done so in an express and clearly understandable manner.

■ Third, Chapter 950 of the Wisconsin Statutes, Rights of Victims and Witnesses of Crime, illustrates a legislative recognition and intent to protect the rights of victims of crime.[5] Section 950.01, Stats., specifically provides:

> **950.01 Legislative intent.** In recognition of the civic and moral duty of victims and witnesses of crime to fully and voluntarily cooperate with law enforcement and prosecutorial agencies, and in further recognition of the continuing importance of such citizen cooperation to state and local law enforcement efforts and the general effectiveness and well-being of the criminal justice system of this state, the legislature declares its intent, in this chapter, to ensure that all victims and witnesses of crime are

---

[5] *See also* Chapter 949 of the Wisconsin Statutes, Awards for the Victims of Crimes. While Chapter 949 is not applicable to victims of delinquent acts committed by a child, it does represent an additional indication of the legislature's desire to protect the rights of victims. Section 949.001, Stats., states, in part:

> **949.001 Legislative intent.** The legislature finds and declares that the state has a moral responsibility to aid innocent victims of violent crime. In order to maintain and to strengthen our democratic system of law and social order, it is essential that the rights of the victim of a crime should be as fully protected as the rights of the criminal offender.

treated with dignity, respect, courtesy and sensitivity; and that the rights extended in this chapter to victims and witnesses of crime are honored and protected by law enforcement agencies, prosecutors and judges in a manner no less vigorous than the protections afforded criminal defendants.

The basic bill of rights for victims under Chapter 950 applies equally to delinquent acts committed by a child as it does to crimes committed by a competent adult. Section 950.02(1m), Stats. Any interpretation of sec. 48.12, Stats., that erases the culpability of child offenders would frustrate the express legislative recognition of victim's rights.

Fourth, while not applicable to this case, the law provides the juvenile court the ability to waive its jurisdiction in a case commenced before the child becomes eighteen years of age involving criminal activity prior to the child's sixteenth birthday. At any time during the juvenile proceeding or when the child becomes eighteen, the juvenile court could appropriately enter into a consent decree with the juvenile offender. "If the court finds that the child has failed to fulfill the express terms and conditions of the consent decree or the child objects to the continuation of the consent decree, the court may waive its jurisdiction." Section 48.12(2), Stats.

Annala also contends that the present interpretation of sec. 48.12(1), Stats., is unconstitutional on equal protection grounds. He asserts that strict scrutiny is the proper analysis for this statute because freedom from imprisonment is a fundamental right. Constitutional questions are questions of law which we review independent of the decisions by the lower courts. *State v. Holmes,* 106 Wis. 2d 31, 41, 315 N.W.2d 703 (1982).

 Equal protection requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class. *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312 (1976). Contrary to the defendant's assertion, there exists no fundamental right to be treated as a juvenile nor is there a fundamental right not be incarcerated for criminal behavior. *See Stokes v. Genakos,* 441 F. Supp. 147, 149 n.2 (D.C. Mass. 1977), and *United States v. Jenkins,* 734 F.2d 1322, 1327 (9th Cir. 1983). Further, Annala is not a member of a suspect class. Therefore, the appropriate analysis is whether the legislative classification rationally furthers a purpose identified by the legislature. *Murgia,* 427 U.S. at 312–14.

 Great deference is afforded to legislative classifications under the rational basis test. *Peterson v. Lindner,* 765 F.2d 698, 705 (7th Cir. 1985); *Jenkins,* 734 F.2d at 1327. In the present situation, the legislature's purpose in providing deferential treatment for juvenile offenders is, "[c]onsistent with the protection of the public interest, to remove from children committing delinquent acts the consequences of criminal behavior and to substitute therefor a program of supervision, care and rehabilitation." Section 48.01(1)(c), Stats.[6] Children committing

---

[6]The thrust of the dissenting opinion can be found at 478 where it concludes that because "[o]ne express purpose of the Children's Code is: 'Consistent with the protection of the public interest, to 'remove from children committing delinquent acts the consequences of criminal behavior and to substitute therefor a program of supervision, care and rehabilitation' . . . persons committing crimes at an early age are not punishable in the adult criminal courts." The dissent's conclusion is incorrect. The dis-

delinquent acts remain culpable for their criminal behavior. However, the legislature recognized that persons charged as children have rehabilitative and treatment needs of children. The programs under the Children's Code are specifically tailored to address the unique needs of children. Permitted dispositions by the juvenile court include placing the child under the supervision of an agency or suitable adult, ordering the child to participate in alcohol and other drug abuse education and treatment programs, in alcohol and other drug abuse education and treatment programs, ordering the child's parents or

---

senting opinion itself at 477 recognizes and sec. 48.18(1), Stats., expressly provides that in the case of first-degree intentional and reckless homicide, even a fourteen-year-old *child* may be waived immediately into the adult criminal justice system. The dissent does not explain this glaring inconsistency in its position.

The dissent fails to recognize that society intends for all individuals to be culpable for their criminal behavior. The provisions within the Children's Code regarding the criminal behavior of children merely provides for the juvenile court to order appropriate treatment, care and rehabilitation for the child defendant that is found guilty of criminal behavior. As explained, the programs under the Children's Code are inapplicable to adult defendants. No provision within the Children's Code nor any other part of the Wisconsin Statutes precludes the circuit court from obtaining jurisdiction over matters in which the juvenile court has lost its jurisdiction because the child defendant has reached the age of majority. Yet, the dissenting opinion at 480 concludes that "[o]nce the child turns eighteen, no court has jurisdiction over the alleged offense." The dissent can provide no express support for this conclusion. Apparently, the dissent concludes that this juvenile offender, who was just shy of sixteen years of age and sexually molested a small child, should be excused from juvenile or adult legal accountability merely because the criminal conduct was not known by the district attorney until after the offender reached the age of majority.

469

guardians to provide certain special care, ordering the child to participate in a supervised work program, and revoking the child's driving license. Sections 48.34 and 48.344, Stats. Persons charged as adults, however, generally will not benefit from the treatment programs designed to benefit children. Therefore, a legislative classification based on an individual's age at the time of prosecution rather than an individual's age at the time of the alleged offense is rationally related to the purposes of the Children's Code.[7] We see no equal protection problem with the present legislative classification.

[7]*See United States v. Thompson,* 718 F.2d 977, 978–79 (10th Cir. 1983) (age at time of conviction rather than age at time of offense rationally related to legislative classification of preferential sentencing for youthful offenders under Federal Youth Corrections Act). *See also United States v. Jenkins,* 734 F.2d 1322, 1327 (9th Cir. 1983), *cert. denied,* 469 U.S. 1217 (1985) (right to equal protection not violated by classification which requires different sentencing treatment based on the age of the offender); *Francis v. State of Maryland,* 605 F.2d 747, 749 (4th Cir. 1979) (the special juvenile court jurisdiction created only for Baltimore City was a permissible legislative classification); *United States v. Azevedo,* 386 F. Supp. 622, 623–25 (D.C. Haw. 1974) (16-year-old juvenile charged with first-degree murder under federal statute with possible penalty of death or life imprisonment was not denied equal protection by not being treated as a juvenile); *United States v. Lowery,* 726 F.2d 474, 478 (9th Cir. 1983); *United States v. Ballesteros,* 691 F.2d 869, 870 (9th Cir. 1982), *cert. denied,* 103 S. Ct. 1438 (1983) (imposition of potentially greater sentence for youthful offender than imposed if offender was sentenced as an adult does not deprive offender of equal protection); and *United States v. Donelson,* 695 F.2d 583, 589–90 (D.C. Cir. 1982) (no equal protection violation where one sentenced by a magistrate under the Federal Youth Corrections Act is exposed to greater penalty than another youthful offender sentenced by a district judge under the Act).

Unlike the defendant in *LeQue,* Annala voluntarily undertook rehabilitation treatment that could have been required by the juvenile court had he been found guilty of a delinquent act. However, the fact that Annala voluntarily undertook rehabilitation treatment is not a jurisdictional consideration nor is it a bar to prosecution. Rather, it is a factor to be considered by the circuit court in its sentencing decision. The sentencing court is required to exercise its discretion to sentence a convicted defendant consistent with the nature of the offense, the character and rehabilitative needs of the defendant, and the need to protect the public. *State v. Sarabia,* 118 Wis. 2d 655, 673, 348 N.W.2d 527 (1984).

Therefore, consistent with previous cases decided by this court, we conclude that the age of the defendant at the time the defendant is charged determines the jurisdiction of the juvenile court, regardless of the defendant's age at the time of the alleged offense. The exclusive jurisdiction of the juvenile court under the Children's Code applies only to matters that are filed in the juvenile court prior to the alleged offender's eighteenth birthday. The circuit court has jurisdiction over matters not exclusively within the jurisdictional province of the juvenile court. This construction provides an incentive for cases involving minors to be handled in the juvenile justice system, where the juvenile court can order the appropriate treatment and rehabilitation of the juvenile offender. Any other construction of the statutes would provide a significant incentive for the juvenile offender to use every avenue to avoid prosecution until he or she reaches eighteen years of age. The dissent's conclusion that there should be no punishment for either major or minor criminal conduct of a juvenile offender if

471

the conduct is not discovered or prosecuted before the offender reaches the age of majority would encourage such offensive behavior. In order to discourage criminal conduct by juvenile offenders, the message that we must convey is that there will be punishment for criminal behavior.

Annala's primary argument in this case is that the district attorney abused his prosecutorial discretion in charging the defendant. Annala maintains that the district attorney charged him to alleviate pressure the victim's parents were placing on him; that he issued the complaint believing it would be dismissed; and when this did not occur he prosecuted Annala to avoid public embarrassment and unfavorable publicity. Therefore, Annala claims that the district attorney's decision to prosecute was based on an improper motive.

The district attorney is afforded great discretion in determining whether to initiate prosecution in a particular case. *Sears v. State,* 94 Wis. 2d 128, 133, 287 N.W.2d 785 (1980); *State v. Karpinski,* 92 Wis. 2d 599, 607, 285 N.W.2d 729 (1979). Few limits are imposed upon the district attorney's prosecutorial discretion. It is an abuse of discretion for the prosecutor to bring charges when the evidence is clearly insufficient to support a conviction or to bring charges on counts of doubtful merit to coerce the defendant to plead guilty to a less serious offense. *Thompson v. State,* 61 Wis. 2d 325, 328–30, 212 N.W.2d 109 (1973). Furthermore, we have stated that " 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' " *Sears,* 94 Wis. 2d at 134 (quoting from *Olyer v. Boles,* 368 U.S. 448, 456 (1962)). *See*

*also Unnamed Petitioners v. Connors,* 136 Wis. 2d 118, 128, 401 N.W.2d 782 (1987), *overruled on other grounds by State v. Unnamed Defendant,* 150 Wis. 2d 352, 358, 441 N.W.2d 696 (1989), stating "[o]nly where there has been an aura of discrimination has this court indicated that checks were to be placed upon a prosecutor's charging decision."

Annala does not suggest that the district attorney prosecuted him based upon meritless charges nor does he suggest that discrimination played a part in the prosecuting decision. Instead, Annala contends that abuse of discretion should be found because the prosecutor brought the charges based on an improper motive. In essence, Annala requests this court to expand its current doctrine concerning prosecutorial discretion by allowing the court to consider the non-discriminatory subjective motivations of the district attorney. We decline to do so.

When probable cause exists for prosecution, the court should not consider the subjective motivations of the district attorney in making his charging decision, except to determine whether a discriminatory basis was involved. On numerous occasions, we have explained that in general the district attorney is answerable to the people of the state and not to the courts or the legislature as to the manner in which he or she exercises prosecutorial discretion. *State ex rel. Kurkierewicz v. Cannon,* 42 Wis. 2d 368, 378, 166 N.W.2d 255 (1969); *Thompson,* 61 Wis. 2d at 332; *State v. Kenyon,* 85 Wis. 2d 36, 42, 270 N.W.2d 160 (1978); *Karpinski,* 92 Wis. 2d at 608; and *Unnamed Petitioners,* 136 Wis. 2d at 126. Political review through the electoral process is sufficient to ensure the proper application of prosecutorial discretion. If this court placed the nondiscriminatory subjective motivations of the district attorney under

scrutiny with respect to the charging decision, it would likely create an enormous amount of litigation challenging prosecutorial discretion that has little or nothing to do with the defendant's guilt or innocence.

Because we decline to extend abuse of discretion challenges to the nondiscriminatory subjective motivations of the district attorney, we need not proceed further to address the district attorney's motivations in this case. For explanatory purposes, however, we emphasize that public protection and the rehabilitative needs of the defendant are only two of the many factors that go into a district attorney's decision to prosecute. Equally compelling factors include the best interests of the victim and the community. The rehabilitative needs of a child victim of a sex crime may demand not only prosecution of the offender but significant punishment if that will have a positive influence on the child victim's recovery from the effects of the crime. *See State v. Jones,* 151 Wis. 2d 488, 496, 444 N.W.2d 760 (Ct. App. 1989). Failure to prosecute under the reasoning of the dissent "may inflict a greater harm on the child by allowing the alleged abuser to go free and by demonstrating to the child that the state of Wisconsin does not place a high enough value on the child's suffering to bring to justice the person alleged to have caused the suffering." *State v. Gilbert,* 109 Wis. 2d 501, 507, 326 N.W.2d 744 (1982). The district attorney is elected to wrestle with balancing all of the interests involved to arrive at a decision whether to prosecute. In the absence of meritless charges or discriminatory motives, this court should not second guess the district attorney's charging decision.

■■■

The district attorney's decision to prosecute Annala was based upon factors which he properly may consider and upon which, in his discretion, he properly may pros-

ecute. Therefore, we conclude that the district attorney in this case did not abuse his prosecutorial discretion in charging Annala. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(concurring).* Section 48.12 clearly provides that the offender's age at the time the jurisdiction of the court is invoked determines whether the juvenile court or the criminal court should exercise its jurisdiction in the first instance. Section 48.12(1) governs when juvenile jurisdiction attaches; sec. 48.18(1) governs when juvenile jurisdiction may be relinquished.

I urge the legislature to reexamine these statutes. Inequities may often result when the state can prosecute offenses in adult court many years after the minor committed the offense.

HEFFERNAN, CHIEF JUSTICE *(dissenting).* *LeQue* was wrongly decided by the court of appeals.[1] The adult court has no jurisdiction over a person concerning a crime committed at an age at which the person could not have been waived into adult court. Accordingly, I dissent.

Section 753.03, Stats., provides that the circuit court has jurisdiction over "all civil and criminal actions and proceedings unless exclusive jurisdiction is given to some other court." The jurisdiction of the juvenile branch of the circuit court is set forth in sec. 48.12(1), Stats.: "The court has exclusive jurisdiction, except as provided in ss. 48.17 and 48.18, over any child 12 years

---

[1] *State v. LeQue,* 150 Wis. 2d 256, 442 N.W.2d 494 (Ct. App. 1989).

of age or older who is alleged to be delinquent as defined in s. 48.02(3m)."

The majority concludes that because sec. 48.18(1), Stats., defines the juvenile court's jurisdiction according to the age of the person, its exclusivity ends when the person turns eighteen, regardless of the date of the offense. However, when read as it must be in conjunction with secs. 48.12(2) and 48.18(1), Stats., the exclusivity of the juvenile court's jurisdiction embraces all acts committed at an age when the person cannot be waived into adult court. When such person becomes eighteen and no action has been initiated in the juvenile court, no court has jurisdiction over the offense.

Section 48.12, Stats., provides in its entirety:

> **(1)** The court has exclusive jurisdiction, except as provided in ss. 48.17 and 48.18, over any child 12 years of age or older who is alleged to be delinquent as defined in s. 48.02 (3m).

> **(2)** If a court proceeding has been commenced under this section before a child is 18 years of age, but the child becomes 18 years of age before admitting the facts of the petition at the plea hearing or if the child denies the facts, before an adjudication, the court retains jurisdiction over the case to dismiss the action with prejudice, to waive its jurisdiction under s. 48.18, or to enter into a consent decree. If the court finds that the child has failed to fulfill the express terms and conditions of the consent decree or the child objects to the continuation of the consent decree, the court may waive its jurisdiction.

Section 48.18(1), Stats., provides in part:

> If a child is alleged to have violated s. 940.01 or 940.02 [first-degree intentional and reckless homicide] on or after his or her 14th birthday or if a child

476

> is alleged to have violated any state criminal law on or after his or her 16th birthday, the child or district attorney may apply to the court to waive its jurisdiction under this chapter.

Annala committed the sexual assaults in question when he was fifteen years old. Clearly, if Annala's prosecution had been commenced when he was sixteen or seventeen, and he turned eighteen before admitting the facts or before an adjudication, the juvenile court would have been limited under sec. 48.12(2), Stats., either to dismiss the action with prejudice or enter into a consent decree (which is unlikely).[2] Waiver is not an option. Because waiver is not available, under sec. 48.12(1), Stats., the juvenile court has exclusive jurisdiction over the action, not merely over the child.

This result cannot be said to be caused by double jeopardy concerns, because waiver is proper as allowed by sec. 48.18(1), Stats. If the jurisdiction of the juvenile and adult courts were as clearly delineated as the majority contends, sec. 48.12(2), Stats., would be unnecessary. The juvenile court would simply lose its jurisdiction and the action would transfer to the adult court.[3]

---

[2]One would imagine that there will be very few if any consent decrees in this situation. Logically, the provision allowing consent decrees will be used when the court also has the option of waiving its jurisdiction and thus allowing prosecution in the adult court. The majority's conclusion at 467 that the court may waive its jurisdiction where the criminal activity occurred prior to his sixteenth birthday, if that individual enters into and then violates or objects continuation of the consent decree, ignores the fact that this situation is likely never to arise because such individuals have no reason to enter into a consent decree.

[3]The majority's assertion that sec. 48.12(2), Stats., provides an incentive to file cases in the juvenile court is nonsensical—*State v. Becker,* 74 Wis. 2d 675, 247 N.W.2d 495 (1976)

477

What this reveals is that the legislature has determined that children who violate criminal laws prior to their sixteenth birthday (or fourteenth for first-degree homicide) should not be held criminally accountable as adults. That is, a child such as Annala should not be held accountable as an adult, and face a lengthy prison sentence at worst and a felony conviction at best, for actions taken at the age of fifteen. One express purpose of the Children's Code is: "Consistent with the protection of the public interest, to remove from children committing delinquent acts the consequences of *criminal behavior* and to substitute therefor a program of supervision, care and rehabilitation." Section 48.01(1)(c), Stats. There is no other way to interpret secs. 48.12(2) and 48.18(1), than to conclude that persons committing crimes at an early age are not punishable in the adult criminal courts.

The legislative history of secs. 48.18(1) and 48.12(2), Stats., supports this conclusion. Prior to 1977, sec. 48.18, allowed the juvenile court to waive its jurisdiction over any child over the age of sixteen, regardless of the age at which the offense was committed. *See, e.g.,* sec. 48.18, Stats. 1975. Also at that time, sec. 48.12(2), Stats., did not exist. Accordingly, decisions of this court through 1977—the decisions relied upon by the majority—concluded that the date of charging, and not the date of the offense, was determinative of jurisdiction. *See State ex rel. Koopman v. Waukesha County Court Judges,* 38 Wis. 2d 492, 499, 157 N.W.2d 623 (1968); *State v. Becker,* 74 Wis. 2d 675, 678, 247 N.W.2d 495 (1976); and *State v. Avery,* 80 Wis. 2d 305, 310, 259 N.W.2d 63 (1977). Because of the subsequent revision of

clearly holds that the state may not delay charging a child in order to avoid juvenile court jurisdiction. No extra "incentive" is necessary.

478

sec. 48.18(1), and the creation of sec. 48.12(2), these cases are irrelevant to the jurisdictional issue here.

In 1977, the legislature repealed and recreated sec. 48.18, Stats. Section 31, ch. 354, Laws of 1977. The recreated statute greatly expanded and explained the waiver procedure, and specifically tied the ability to waive jurisdiction to the age of the child at the time of the act. Section 48.18(1), Stats. 1977, provided in part: "If a child is alleged to have violated a state criminal law on or after his or her 16th birthday, the child or district attorney may apply to the court to waive its jurisdiction under this chapter."[4] Implicit in this change is the legislative determination that criminal culpability in an adult court is improper for actions taken at the age of fifteen or younger.

In 1979, the legislature created sec. 48.12(2), Stats., circumscribing the juvenile court's options when a child turns eighteen during juvenile court proceedings. Chapter 300, Laws of 1979. The court's options where the act occurred prior to the child's sixteenth birthday are to either dismiss the action with prejudice or enter into a consent decree. This subsection is completely consistent with the conclusion that the juvenile court has exclusive jurisdiction over criminal acts committed by children

---

[4] 1987 Wis. Act 27 amended sec. 48.18(1) to allow waiver of jurisdiction for first-degree intentional and reckless homicide committed on or after a child's fourteenth birthday. The fact that the legislature has chosen to treat first-degree intentional and reckless homicide differently, and allow waiver into adult court for such offenses when committed after the child's fourteenth birthday, is not, as the majority asserts, a "glaring inconsistency" in any sense. It represents a legislative determination that adult criminal culpability may attach at an earlier age to first-degree intentional and reckless homicide than it will to other criminal acts.

before their sixteenth birthday. Once the child turns eighteen, no court has jurisdiction over the alleged offense.[5]

The majority's conclusion in this case seems to proceed from a draconian retributive view of criminal law. That is, where there is a crime, there must be a punishment. The majority rather bleakly asserts: "Children committing delinquent acts remain culpable for their criminal behavior." Majority op. at 468–469. Completely missing from the majority's analysis is any consideration

---

[5] Apparently the majority would ignore this legislative history because it concludes that the language of the statute is unambiguous. It is of course enough to state that I conclude that sec. 48.12, Stats., read as whole is ambiguous regarding the nature of the juvenile court's exclusive jurisdiction because sec. 48.12(2) requires the juvenile court to dismiss "the action," not the child, with prejudice when the act was committed prior to the waiver age and the defendant declines to enter into a consent decree. But more importantly it should be noted that the primary purpose of statutory construction is to ascertain the legislature's intent, and that this court has recognized exceptions to the plain meaning rule—both when persuasive legislative history indicates a contrary legislative intent, *Wisconsin Higher Educational Aids Board v. Hervey,* 113 Wis. 2d 634, 641 n. 9, 335 N.W.2d 607 (1983), *quoting United States v. Dickerson,* 310 U.S. 554, 562 (1940), and when an "absurd or unreasonable result" would be effected by merely applying the plain meaning rule. *Rice v. Ashland County,* 108 Wis. 189, 192, 84 N.W. 189 (1900). The creation of sec. 48.12(2), Stats., and the revision of sec. 48.18(1), Stats., indicate a legislative determination that adult criminal culpability does not attach to acts taken at age when waiver into adult court is impossible, and consistent with the primary purpose of statutory construction—to ascertain the legislature's intent—and with the rule of lenity that ambiguity in penal statutes should be interpreted in a defendant's favor, *State v. Wilson,* 77 Wis. 2d 15, 28, 252 N.W.2d 64 (1977), I cannot ignore that legislative history.

of the *legislature's* declaration of the relative culpability of a fifteen-year-old and an eighteen-year-old. For example, in rejecting Annala's argument that secs. 48.12(2) and 48.18(1), Stats., read together, indicate that the juvenile court has exclusive jurisdiction based upon the age of the child at the time of the offense, the majority states:

> [T]he practical effect of Annala's contention would be to lower the statute of limitations under sec. 939.74(1), Stats., for felony crimes from six years to something less than six years where the defendant was between the ages of twelve and sixteen years old at the time of the alleged criminal conduct. We do not think that the legislature intended to allow a minor who is less than sixteen years old who commits a serious felony to cajole or manipulate the victim or conceal the crime or conceal suspected culpability for the crime until reaching eighteen years of age and thereby conclusively frustrating the State's ability to hold him or her accountable for the wrongdoing.

Majority op. at 465-466. While I must first state that I do not share the majority's caustic cynicism regarding the diabolical nature of fifteen-year-old delinquents, I hasten to add that there is absolutely no evidence in this record that Annala "cajoled" or "manipulated" the victim or her family or attempted to conceal the crime at any time. Quite the contrary. Annala admitted his culpability and accepted the treatment agreed upon by his parents and the victim's mother. He successfully completed the treatment and has had no further problems with the law.[6] As the trial court noted:

---

[6]Unrelated to the facts of this case, where the act was openly acknowledged by Annala, the majority opinion raises the specter of the victim's family intentionally failing to inform the authorities of a juvenile offense until the perpetrator turns eighteen.

[B]y a curious irony here, and I, I think probably because Mr. Annala was willing to acknowledge his culpability, was willing to submit to treatment and, and did respond favorably to that treatment, there was no incentive for any of the parties that were involved to take any action that would have triggered the juvenile court system getting involved.

Had Mr. Annala refused to acknowledge his culpability, or had he refused to submit to treatment, or had he not responded favorably to that treatment, I expect that very probably what would have happened would have been the juvenile court system would have gotten involved at that point, Mr. Annala would have been handled as a juvenile offender, and this action then clearly would have been barred. It is because Mr.—because of Mr. Annala's admission of guilt and because of the—what I consider to be responsible action on his part of getting treatment and, and responding to that treatment that he is in the position that he is in now, which is a, an unusual and nearly unique situation under our criminal justice system, where someone who committed an offense below the age of waiver in juvenile court can be tried and convicted as an adult offender.

Certainly this is not a case where a delinquent youth intentionally frustrated the state's ability to hold him accountable.[7]

Similar to the deliberate official delay banned in *Becker,* 74 Wis. 2d at 678, individuals should not be subject to the manipulation of the juvenile system by private individuals. And while there is no evidence of any manipulation by the victim's family in this case, the facts in *LeQue,* 150 Wis. 2d 258-60, indicate that it is certainly a possibility.

[7]The other issue raised in the order for additional briefing is whether the fact that Annala received treatment similar to that prescribed in the Children's Code distinguishes this case from *LeQue.* The majority concludes that this presents merely a con-

Additionally, I do not find repugnant that the statute of limitations for criminal acts committed by young children is in effect reduced from six years to something between six and two years, depending upon the age of the child at the time of the offense. In fact, it is by legislative and by any humane determinant laudable. The legislature has determined that the state will not hold individuals criminally accountable as adults for acts taken before the age of sixteen. The 1977 revisions to ch. 48, appropriately read, demonstrate that society's interest in punishing aberrant behavior as criminal behavior only *begins* when a child turns sixteen. Prior to that time, with the exception of first degree homicide, the legislature has determined that a child will only be held accountable as a child for his or her acts.

I agree with the majority that the rehabilitative needs of victims are an important concern in deciding *whether* to prosecute; however, I do not think such concerns mandate adult criminal liability for the acts of young children, where the legislature has expressed a contrary intent. I conclude that the adult circuit court has no jurisdiction over the conduct of a person at an age when waiver into adult court is impossible.

The problem with the majority's opinion is that it postulates a case that is not the one at issue nor is it consistent with the facts here. I repeat that the parent of the child who was the subject of Annala's delinquent misconduct confronted Annala and his parents shortly after the incident and, together with the full acquies-

---

sideration for the sentencing court. While this is certainly true, a prosecutor should give strong consideration to such treatment when determining whether to charge an adult with a crime committed as a young child. Of course, if the majority did not reach its bizarre conclusion, this additional burden on the exercise of prosecutorial discretion would be obviated.

cence of all concerned, it was determined that Annala submit to a course of therapy which by all reliable evidence was extremely successful. What was done here is what is hoped to be accomplished by treatment of the delinquent child in successful juvenile court programs. Had this been done under the supervision of a juvenile court, the author of the majority would be touting its efficacy. But because it was accomplished by concerned parents, with the help of trained professionals, with the acknowledgment of guilt by the delinquent, the majority appears to be thwarted of its desire for societal vengeance merely because private resources were used and not the taxpayer-supported resources of the court.

Remedial therapy and social improvement are not the sole province of the judicial system, and it is symptomatic of governmental arrogance to assert that only the courts can do justice or act in such a manner that a victim's desire for vindication can be assuaged. As the author of the majority was for years a trial judge concerned with problems of young persons, and a good judge, too, his predilection for formalized court proceedings is understandable. But the majority for which he writes is oblivious to the fact that it is simply unjust from any standpoint to now prosecute under the circumstances where Annala has confessed, demonstrated contrition, and there was as complete a turnaround in his conduct as any court-supervised program could have accomplished. Moreover, to say that adult criminal punishment is all that will assure justice and assuage the victim's hurt is a slur upon the efficacy of all juvenile court rehabilitative programs and a slur upon the legislatively adopted policy that treatment of the type afforded under the supervision of the juvenile courts is in the public interest. How then can this successful treatment of Annala not be in the public interest except when

viewed by those who exalt the procedures of the courts over the substance of confession, contrition, treatment and reformation.

And, of course, the assertion of jurisdiction by the majority is thin soup indeed. Their basic argument is simply that the fundamental principle of law is invariably retribution, but only as meted out in a court. Hence, any rationale which demonstrates that court procedures are not available is ipso facto wrong because that result thwarts the coveted procedure. The majority's *ipse dixit* is simply that a conclusion that there is no jurisdiction cannot be right. The fundamental point, however, is that Annala has responded appropriately by facing up to the problems created by his opprobrious conduct toward a child, and as a child with the approval of his parents and the other child's parent, he accepted his guilt with the responsibility of an adult. Rational and enlightened justice should, in the circumstances of this case, abhor the Shylockian retribution which the majority deems appropriate. I dissent.